| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | JUDICIAL DISTRICT |
| | CASE TYPE: Civil |

|  |  |
|---|---|
| Patricia Gegner, | Court File No: |
| | Judge: |
| Plaintiff, | |
| | **SUMMONS** |
| v. | |
| Admiral Merchants Motor Freight, Inc., | |
| Defendant. | |

THIS SUMMONS IS DIRECTED TO **Admiral Merchants Motor Freight, Inc.**

1. **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

2. **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail **a written response**, called an Answer, to the person who signed this summons within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at 100 South 5th Street, Suite 1500, Minneapolis, MN 55402-1254.

3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

**EXHIBIT A**

6. **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

BASSFORD REMELE
*A Professional Association*

Date: November 21, 2018

By *s/ Daniel R. Olson*
Daniel R. Olson (#389235)
Brittany Bachman Skemp (#395227)
100 South 5th Street, Suite 1500
Minneapolis, MN 55402-1254
Telephone: (612) 333-3000
Facsimile: (612) 333-8829
dolson@bassford.com
jklobucar@bassford.com
bskemp@bassford.com

*Attorneys for Plaintiff Patricia Gegner*

2

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

JUDICIAL DISTRICT
CASE TYPE: Civil

---

Patricia Gegner,

Plaintiff,

v.

Admiral Merchants Motor Freight, Inc.,

Defendant.

Court File No:
Judge:

**COMPLAINT**

**(JURY TRIAL DEMANDED)**

---

Plaintiff Patricia Gegner, for her Complaint against Defendant Admiral Merchants Motor Freight, Inc., states and alleges as follows:

## PARTIES

1.      This is an action to recover damages incurred by Plaintiff Patricia Gegner from her former employer, Defendant Admiral Merchants Motor Freight, Inc., for a litany of torts and statutory violations committed by Defendant towards the end of Ms. Gegner's employment, including defamation, defamation per se, disability discrimination in violation of the Minnesota Human Rights Act ("MHRA"), reprisal in violation of the MHRA, Family Medical Leave Act ("FMLA") interference, FMLA discrimination, FMLA retaliation, and negligent infliction of emotional distress.

2.      Ms. Gegner was a dedicated and accomplished employee of Defendant's for nearly ten years. On the night of March 16, 2018, she suffered a life-threatening pulmonary embolism while attending a work conference in Charlotte, North Carolina. Instead of supporting a valued employee in her time of need, Defendant defamed her, discriminated against her, retaliated against her, and ultimately fired her because of her disability and ensuing medical leave. Ms. Gegner now

seeks remuneration for lost wages and benefits, damage to reputation, emotional distress, treble

damages, statutory penalties, and attorney's fees.

## PARTIES

3.      Plaintiff Patricia Gegner is an adult resident who resides in Lakeville, Minnesota.

4.      Defendant Admiral Merchants Motor Freight, Inc. is a domestic corporation with a

registered office address of 2345 Rice Street, Suite 230, Roseville, Minnesota 55113.

5.      Defendant's principal place of business is located at 215 South Eleventh Street,

Minneapolis, Minnesota 55403.

6.      At all relevant times, Ms. Gegner was Defendant's "employee" within the meaning

of Minn. Stat. § 363A.03 and 29 U.S.C. § 2611(2), and Defendant was Ms. Gegner's "employer"

within the meaning of Minn. Stat. § 363A.03 and 29 U.S.C. § 2611(4).

## JURISDICTION AND VENUE

7.      This is a civil case in which the Court has original jurisdiction under the

Constitution of the State of Minnesota, Article 6, § 3.

8.      The Court has personal jurisdiction over the named Defendant, who has transacted

business in Minnesota.

9.      Venue is proper in Hennepin County under Minn. Stat. §§ 542.01 and 542.09

because Defendant's principal place of business is in Minneapolis, Minnesota.

## FACTUAL BACKGROUND

10.     In September 2008, Defendant hired Ms. Gegner to work as an Assistant Credit

Manager in its Credit and Collections Department.

11.     During her decade of employment, Ms. Gegner regularly received positive

performance reviews, annual raises, bonuses, and promotions.  In May 2010, Ms. Gegner was

2

promoted to Credit Manager. At the end of her employment, she earned an annual salary in excess of $80,000 annually, in addition to performance bonuses and profit sharing.

12.     On March 16, 2018, Ms. Gegner attended Defendant's annual awards meeting in Charlotte, North Carolina. The meeting was a weekend-long event for which Defendant flew in employees, drivers, agents, and business contacts from across the country.

13.     Throughout the first day of meetings, Ms. Gegner experienced sharp, intermittent pain. She assumed the pain was back pain.

14.     Later in the evening, Ms. Gegner was socializing with other attendees in the hotel lounge when she was suddenly overcome by excruciating pain. Ms. Gegner collapsed to her knees and fell over unconscious, breaking a glass in the process.

15.     When Ms. Gegner regained consciousness, two attendees assisted her back to her hotel room and helped her into bed. She remained bed-ridden for the rest of the conference. She eventually flew home on Sunday and remained in pain for several days upon her arrival home.

16.     On March 19, 2018, Ms. Gegner scheduled a doctor's appointment and was diagnosed with a fractured vertebra sustained during the fall in Charlotte. Her physician prescribed a conservative treatment plan to combat the pain.

17.     Ms. Gegner was still in too much pain to go to work on March 19 and 20, 2018. She used paid time off ("PTO") as a result. She returned to work on March 21, 2018, but was still suffering from extreme pain.

18.     Upon her return, her supervisor, James Bemis, summoned her into a meeting with Defendants' human resources manager, Augusta Kirk. Mr. Bemis delivered a written reprimand to Ms. Gegner for "acting drunk" at the annual awards meeting in Charlotte the week before. The reprimand was a "final warning."

3

19.     During her meeting with Mr. Bemis, Ms. Gegner explained that she was not intoxicated during the incident in question; she had suffered a serious medical event that caused her excruciating pain and was continuing to cause pain almost a week later.  She also explained that she fractured a vertebra during the fall in Charlotte.

20.     Mr. Bemis refused to reconsider the written reprimand despite the fact that he did not witness the event in question in Charlotte.  He further told Ms. Gegner that she would be required to inform him by email whenever she was scheduling doctor appointments moving forward.  Upon information and belief, Mr. Bemis has never required another employee to notify him by email when scheduling doctor appointments.

21.     Meanwhile, the conservative treatment did little to ease Ms. Gegner's pain.  On or about April 6, 2018, the pain became unbearable, forcing Ms. Gegner to go to the emergency room.  She explained the nature of her pain to the treating physician.  The treating physician asked a series of questions regarding the incident in which she lost consciousness in Charlotte.  The physician opined that Ms. Gegner suffered from a pulmonary embolism in the hotel lounge based on Ms. Gegner's description of the events and ordered a CT scan.

22.     The CT scan showed a sizable pulmonary embolism in Ms. Gegner's lungs.  She was transferred immediately to Fairview Southdale and remained in the hospital for three days for treatment and observation.

23.     Ms. Gegner missed several days of work in April 2018 as she recovered from and treated her serious medical condition.  She used PTO for these absences.  She was not approved to take FMLA leave during this time.  In fact, she expressly told Mr. Bemis that she did not want to take FMLA leave at that time.

4

24.     After she returned to work in mid-April 2018, Defendant's President, Brian Short, called Ms. Gegner into his office. Mr. Short informed Ms. Gegner that one of the attendees at the Charlotte awards meeting had contacted him on her behalf. Mr. Short indicated that the attendee told him that she heard that Ms. Gegner was disciplined because of the incident at the hotel lounge. The attendee explained that Ms. Gegner was not intoxicated at the time of the incident, as Ms. Gegner was disciplined for. Mr. Short further expressed his support for Ms. Gegner at that time.

25.     Regardless of Mr. Short's expressed support, Ms. Gegner's written reprimand was not revoked. Upon information and belief, Mr. Short relayed his conversation with the Charlotte attendee to Mr. Bemis, and Mr. Bemis simply ignored the information provided to him by Mr. Short.

26.     Around the same time as her meeting with Mr. Short, Ms. Gegner also learned that false rumors were being spread by Defendant's employees regarding her medical emergency in Charlotte.

27.     Ms. Gegner spoke with a co-worker in the sales department in early-May. The co-worker told Ms. Gegner that Defendant's Vice President, Doug Millroy, was telling employees that Ms. Gegner "was drunk and fell on her ass" during the incident in Charlotte.

28.     Ms. Gegner explained to the co-worker that she was not drunk in Charlotte, as Mr. Millroy was falsely stating—she had suffered from a pulmonary embolism. Mr. Millroy's false statements irreparably damaged Ms. Gegner's professional reputation.

29.     Ms. Gegner began to experience extreme anxiety at work after she learned of Mr. Millroy's defamatory statements. She was also still upset that she was disciplined for "acting drunk" in Charlotte when, in reality, she experienced a serious medical issue.

30.     At the advice of her physician, Ms. Gegner requested FMLA leave on August 10, 2018, to undergo counseling for her anxiety, as well as physical and edema therapy to improve her physical condition.

31.     Defendant approved Ms. Gegner's FMLA leave for one month.

32.     Ms. Gegner's health failed to improve by early September 2018. Her physician recommended that her leave be extended for the full 12 weeks allotted under the FMLA and additionally through the end of November 2018.

33.     On October 3, 2018, Ms. Gegner received a letter from Ms. Kirk. Ms. Kirk informed Ms. Gegner that her FMLA leave would expire on October 26, 2018. Ms. Kirk did not offer to enter into an interactive process to discuss alternative accommodations, such as remaining on unpaid leave or working from home. She simply stated that Ms. Gegner would be terminated if she did not arrive for work on Monday, October 29.

34.     Ms. Kirk sent a follow-up letter on October 4, 2018, indicating that her earlier letter incorrectly calculated Ms. Gegner's FMLA time. She asserted that Ms. Gegner's FMLA leave would expire on Monday, October 29, 2018. Ms. Kirk advised Ms. Gegner that she would be terminated if she did not return to work on October 30, 2018.

35.     Both of Ms. Kirk's letters wrongly counted Ms. Gegner's FMLA leave. Each letter counted the days that Ms. Gegner missed work in April after the pulmonary-embolism diagnosis towards her allotted FMLA leave—despite the fact that Ms. Gegner used regular PTO for those absences, was not approved to take FMLA leave during that time, and expressly told Mr. Bemis that she did not want to take FMLA leave at that time.

36.     On October 22, 2018, Ms. Gegner responded to Ms. Kirk and asserted that her FMLA leave was being incorrectly calculated. She also noted that her doctor was not clearing her

6

to return to work until the end of November and asked if Defendant could do anything else to accommodate her disability short of an abrupt termination.

37.     On October 23, 2018, Ms. Kirk responded to Ms. Gegner.  She asserted that she had correctly calculated Ms. Gegner's FMLA leave with no explanation.  In doing so, she and Defendant interfered with the rights afforded to Ms. Gegner under the FMLA.

38.     Additionally, Ms. Kirk refused to engage Ms. Gegner in an interactive process to determine whether there was any additional disability accommodation that Defendant could offer. In doing so, Ms. Kirk and Defendant violated the MHRA by failing to accommodate Ms. Gegner's disability.

39.     On October 29, 2018, Defendant terminated Ms. Gegner's employment while she was still on FMLA leave—even under Ms. Kirk's incorrect and illegal calculation.

<u>COUNT I</u>
**VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT**
**Minn. Stat. § 363A.01, *et seq.***
**(FAILURE TO ACCOMMODATE)**

40.     Ms. Gegner hereby re-alleges and incorporates by reference each and every paragraph of this Complaint.

41.     Minnesota Statute § 363A.08, subd. 6, makes it an unfair employment practice for an employer "not to make reasonable accommodation to the known disability of a qualified disabled person . . . unless the employer . . . can demonstrate that the accommodation would impose an undue hardship on the business."

42.     Ms. Gegner suffers from an impairment that substantially and materially limits one or more major life activities and has a record of such impairment.

43.     Defendant knew of Ms. Gegner's disability.

44.     Defendant failed to reasonably accommodate Ms. Gegner's known disability.

7

45.     Defendant's conduct described herein violates Minn. Stat. § 363A.08 of the Minnesota Human Rights Act.

46.     As a result of Defendant's conduct in direct violation of the MHRA, Ms. Gegner has suffered loss of past and future income, mental anguish, emotional distress, and other damages in an amount in excess of $50,000.

47.     Defendant committed the above-alleged acts with malice, reckless disregard or deliberate disregard for the rights and safety of Ms. Gegner.  As a result, Ms. Gegner is entitled to punitive damages and intends to seek leave to amend her complaint to assert claims for punitive damages in accordance with applicable statutes.

## COUNT II
## VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT
### Minn. Stat. § 363A.01, *et seq.*
### (REPRISAL DISCRIMINATION)

48.     Ms. Gegner hereby re-alleges and incorporates by reference each and every paragraph of this Complaint.

49.     Minnesota Statute § 363A.15 makes it an unfair employment practice for an employer to "intentionally engage in any reprisal against any person because that person (1) opposed a practice forbidden under this chapter or has filed a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing."

50.     Reprisal includes, but is not limited to, "any form of intimidation, retaliation, or harassment. It is a reprisal for an employer . . . to refuse to hire the individual; depart from any customary employment practice; transfer or assign the individual to a lesser position in terms of wages, hours, job classification, job security, or other employment status." *Id.*

51.     Defendant's conduct described herein violates Minn. Stat. § 363A.15 of the Minnesota Human Rights Act.

52.    As a result of Defendant's conduct in direct violation of the MHRA, Ms. Gegner has suffered loss of past and future income, mental anguish, emotional distress and other damages in an amount in excess of $50,000.

53.    Defendant committed the above-alleged acts with malice, reckless disregard or deliberate disregard for the rights and safety of Ms. Gegner. As a result, Ms. Gegner is entitled to punitive damages and intends to seek leave to amend her complaint to assert claims for punitive damages in accordance with applicable statutes.

## COUNT III
## VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT
### 29 U.S.C. § 2601, *et seq.*
### (INTERFERENCE – DENIAL OF FMLA ENTITLEMENT)

54.    Ms. Gegner hereby re-alleges and incorporates by reference each and every paragraph of this Complaint.

55.    The Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2612(a)(1)(D) and 2612(d)(2)(B), gives eligible employees the right to take up to twelve (12) weeks of leave because of a serious health condition that makes the employee unable to perform the functions of the employee's position.

56.    A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

57.    29 U.S.C. § 2611(2) of the FMLA defines an "eligible employee" as an individual who has been employed "for at least 12 months by the employer with respect to whom leave is requested" and "for at least 1,250 hours of service with such employer during the previous 12-month period."

9

58.     Under the FMLA, the twelve weeks of medical leave can be taken intermittently or on a reduced schedule when medically necessary. 29 U.S.C. § 2612(b)(1).

59.     29 U.S.C. § 2615(a) of the FMLA provides that it is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided under the FMLA.

60.     Ms. Gegner was an eligible employee of Defendant for purposes of 29 U.S.C. §§ 2611(2) and had a serious health condition that required treatment.

61.     Defendant interfered with Ms. Gegner's right to use her approved FMLA leave. Specifically, Defendant denied Ms. Gegner the opportunity to fully exercise her approved 12-week FMLA leave.

62.     As a result of Defendant's conduct in direct violation of the FMLA, Ms. Gegner has suffered, and continues to suffer emotional distress, humiliation, embarrassment, loss of wages and benefits, loss of reputation, and other serious damages in an amount in excess of $50,000.

63.     Defendant committed the above-alleged facts with malice, reckless disregard or deliberate disregard for the rights and safety of Ms. Gegner.  As a result, Ms. Gegner is entitled to punitive damages and intends to seek leave to amend her complaint to assert claims for punitive damages in accordance with applicable statutes.

## COUNT IV
### VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT
#### 29 U.S.C. § 2601, *et seq.*
#### (DISCRIMINATION)

64.     Ms. Gegner hereby re-alleges and incorporates by reference each and every paragraph of this Complaint.

65.     The Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2612(a)(1)(D) and 2612(d)(2)(B), gives eligible employees the right to take up to twelve (12) weeks of leave because

10

of a serious health condition that makes the employee unable to perform the functions of the employee's position.

66.     Ms. Gegner was an eligible employee of Defendant for purposes of 29 U.S.C. §§ 2611(2) and had a serious health condition that required treatment.

67.     29 U.S.C. § 2615(a) of the FMLA provides that it is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided under the FMLA.

68.     29 C.F.R. § 825.220(c) of the FMLA's implementing regulations prohibits "an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights."

69.     As detailed herein, Defendant discriminated against Ms. Gegner for taking FMLA leave by terminating her employment.

70.     The unlawful employment practices complained above were intentional and were performed by Defendant with malice or reckless indifference to the laws which protect Ms. Gegner.

71.     As a result of Defendant's conduct in direct violation of the FMLA, Ms. Gegner has suffered, and continues to suffer emotional distress, humiliation, embarrassment, loss of wages and benefits, loss of reputation, and other serious damages in an amount in excess of $50,000.

72.     Defendant committed the above-alleged acts with malice, reckless disregard or deliberate disregard for the rights and safety of Ms. Gegner. As a result, Ms. Gegner is entitled to punitive damages and intends to seek leave to amend her complaint to assert claims for punitive damages in accordance with applicable statutes.

11

<u>COUNT V</u>
VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT
29 U.S.C. § 2601, *et seq.*
(RETALIATION)

73.     Ms. Gegner hereby re-alleges and incorporates by reference each and every paragraph of this Complaint.

74.     The Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2612(a)(1)(D) and 2612(d)(2)(B), gives eligible employees the right to take up to twelve (12) weeks of leave because of a serious health condition that makes the employee unable to perform the functions of the employee's position.

75.     29 U.S.C. § 2615(a) of the FMLA provides that it is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided under the FMLA.

76.     Ms. Gegner was an eligible employee of Defendant for purposes of 29 U.S.C. §§ 2611(2) and had a serious health condition that required treatment.

77.     29 C.F.R. § 825.220(c) of the FMLA's implementing regulations prohibits "an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights."

78.     The FMLA's regulations further state that "[a]n employer is prohibited from discharging or in any other way discriminating against any person (whether or not an employee) for opposing or complaining about any unlawful practice under the Act." 29 C.F.R. § 825.220(a)(2).

79.     As detailed herein, Defendant retaliated against Ms. Gegner by terminating her employment after she complained about Defendant's unlawful practice of miscalculating her FMLA leave and while she was still on FMLA leave.

12

80.    As a result of Defendant's conduct in direct violation of the FMLA, Ms. Gegner

has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, loss of

wages and benefits, loss of reputation, and other serious damages in an amount in excess of

$50,000.

81.    Defendant committed the above-alleged facts with malice, reckless disregard or

deliberate disregard for the rights and safety of Ms. Gegner.  As a result, Ms. Gegner is entitled to

punitive damages and intends to seek leave to amend her complaint to assert claims for punitive

damages in accordance with applicable statutes.

<u>COUNT VI</u>
<u>DEFAMATION PER SE</u>

82.    Ms. Gegner hereby re-alleges and incorporates by reference each and every

paragraph of this Complaint.

83.    By and through the conduct of its Vice President acting in the scope of his

employment, Defendant falsely claimed that Ms. Gegner was intoxicated at a work event;

including, specifically, that she was "drunk and fell on her ass." In actuality, Ms. Gegner suffered

from a life-threatening medical condition during the event in question.  Such statements are "of

and concerning" Ms. Gegner and her profession, and directly related to Ms. Gegner's professional

reputation in the community.

84.    Defendant repeatedly communicated these false claims openly and notoriously to

the public.

85.    Defendant's statements were made with the express intention to injure Ms.

Gegner's reputation with respect to her employment, business, and reputation. These statements

also demonstrate a lack of exercise of due care in the exercise of Defendant's statutory and

administrative duties.

86.     Defendant's statements are provably false and, because they relate to Ms. Gegner's business, trade, and professional conduct, are defamatory per se.

87.     As a direct and proximate result of Defendant's defamation per se, Ms. Gegner has suffered, and continues to suffer, injuries including but not limited to, out-of-pocket expenses, loss of income, attorneys' fees and expenses, loss of reputation, pain and suffering, mental anguish, and public humiliation. Moreover, because Defendant's statements were defamatory per se, Ms. Gegner has presumptively been damaged in an amount to be determined at trial.

## COUNT VII
## DEFAMATION

88.     Ms. Gegner hereby re-alleges and incorporates by reference each and every paragraph of this Complaint.

89.     By and through the conduct of its Vice President acting in the scope of his employment, Defendant falsely claimed, among other things, that Ms. Gegner was intoxicated at a work event, when in actuality she suffered from a pulmonary embolism.

90.     Defendant repeatedly communicated these false claims openly and notoriously to the public, Ms. Gegner's co-workers, and others.

91.     Defendant's communication of these false claims was designed and/or intended to lower Ms. Gegner's reputation in the community.

92.     As a direct and proximate result of the conduct of Defendant, Ms. Gegner has suffered, and continues to suffer, injuries including but not limited to, out-of-pocket expenses, loss of income, attorneys' fees and expenses, loss of reputation, pain and suffering, mental anguish, and public humiliation.

14

## COUNT VIII
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

93.     Ms. Gegner hereby re-alleges and incorporates by reference each and every paragraph of this Complaint.

94.     Defendant owed Ms. Gegner a duty of care not to cause her emotional distress.

95.     Defendant breached this duty of care by way of its own conduct as alleged herein.

96.     For example, Defendant acts of spreading false rumors about Ms. Gegner and taking adverse action against her as a result of her medical condition has caused her severe emotional distress.

97.     As a proximate result of Defendant's extreme and outrageous acts, Ms. Gegner has suffered emotional distress, humiliation, and embarrassment.

98.     As a result of Defendant's conduct, Ms. Gegner has suffered has suffered, and continues to suffer emotional distress, humiliation, embarrassment, loss of wages and benefits, loss of reputation, and other serious damages in an amount in excess of $50,000.

## JURY TRIAL DEMAND

99.     Ms. Gegner hereby demands a jury trial as to all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Patricia Gegner prays for judgement against Defendant Admiral Merchants Motor Freight, Inc., as follows:

1.  For an award of damages arising from loss of past and future income, and other damages, all in an amount in excess of $50,000;

2.  For an award of damages for mental anguish and emotional distress in an amount in excess of $50,000;

3.  For Plaintiff's costs, disbursements, and attorneys' fees pursuant to law;

15

4.  For all relief available under the MHRA, Minn. Stat. § 363A.01, *et seq.*, including treble damages, punitive damages and a civil penalty against Defendant;

5.  For all relief available under the FMLA, 29 U.S.C. § 2601, *et seq.*;

6.  For an order of injunctive relief requiring all of Defendant's employees to undergo extensive training on workplace retaliation and discrimination laws;

7.  For other such and further relief available by statute;

8.  For such other and further relief as the Court deems just and equitable.

## ACKNOWLEDGMENT

Plaintiff hereby acknowledges that sanctions may be imposed under the circumstances set forth in Minn. Stat. § 549.211.

BASSFORD REMELE
*A Professional Association*

Date: November 21, 2018

By *s/ Daniel R. Olson*
Daniel R. Olson (#389235)
Brittany Bachman Skemp (#395227)
100 South 5th Street, Suite 1500
Minneapolis, MN 55402-1254
Telephone: (612) 333-3000
Facsimile: (612) 333-8829
dolson@bassford.com
jklobucar@bassford.com
bskemp@bassford.com

*Attorneys for Plaintiff Patricia Gegner*

16